**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
1/25/18
**JEFFREY P. COLWELL, CLERK**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 18-CV-18-PAB-NYW

JESSE MARTINEZ, an individual, and KAREN MARTINEZ, an individual,

      Plaintiffs,

v.

WELLS FARGO BANK, NATIONAL ASSOCIATION d/b/a WELLS FARGO HOME MORTGAGE, INC. d/b/a AMERICA'S SERVICING COMPANY, a national banking association; U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR RESIDENTIAL ASSET SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-EMX5, a national banking association; MCCARTHY & HOLTHUS, LLP, a California limited liability partnership; and MARGARET T. CHAPMAN, in her official capacity as the Public Trustee for the County of Jefferson, State of Colorado,

      Defendants.

---

## AMENDED COMPLAINT

---

### INTRODUCTION

1.     If ever a couple experienced all of the worst practices of the mortgage industry during the subprime mortgage financial crisis, that couple would be Jesse and Karen Martinez.  Mr. and Mrs. Martinez have lived in their family home for over thirty years.  In 2003, Mr. and Mrs. Martinez suffered a loss of income and increased expense when Mrs. Martinez was injured in a significant automobile accident, followed by a heart attack in 2005.  In 2002, Mr. and Mrs. Martinez sought protection under chapter 13 of the United States Bankruptcy Code.  They successfully completed their Chapter 13 repayment plan, but ended up in an unaffordable, subprime mortgage.

2.      In a series of refinances with three subprime mortgage lenders, all of whom were later liquidated in bankruptcy, Mr. and Mrs. Martinez went from a VA loan with an interest rate of 5.5% and a balance of $96,593.65, to a subprime, adjustable rate mortgage with a minimum interest rate of 9.25%, a maximum rate of 15.25%, and a balance of $222,300.00.  Like many subprime mortgages, this last refinance was sold into a mortgage backed security and serviced by one of the nation's largest and most sophisticated financial institutions.

3.      Mr. and Mrs. Martinez fell behind on their payments in 2006.  They made their peace and were prepared to leave their home and move on with their lives.  They packed their things, and were prepared to move out of their home.  After Wells Fargo Bank, National Association d/b/a Wells Fargo Home Mortgage, Inc. d/b/a America's Servicing Company (the "**Bank**") took over servicing their mortgage, the Bank convinced Mr. and Mrs. Martinez to apply for a mortgage modification.  From 2007 through April 2017, Mr. and Mrs. Martinez attempted to work with the Bank to modify their mortgage into an affordable monthly payment.  Time and again, the Bank promised to modify their mortgage upon Mr. and Mrs. Martinez meeting certain requirements.  Time and again, Mr. and Mrs. Martinez met those requirements, but the Bank did not modify their mortgage.  Instead, the Bank, or rather U.S. Bank National Association, as Trustee, for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX5 (the "**MBS Trustee**") took their home.  During this entire time, Mr. and Mrs. Martinez have had their belongings packed and ready to go for fear that the Bank would take their home at a moment's notice.

4.      After the Bank's five prior attempts at foreclosure, McCarthy & Holthus, LLP (the "**Law Firm**") followed through on the foreclosure more than a decade after the original default.  When the Bank, MBS Trustee, and Law Firm finally took Mr. and Mrs. Martinez's

home, the Bank, MBS Trustee, and Law Firm did so without any right.  The Bank and MBS Trustee had made promises that would have stopped the foreclosure, and then broke those promises by foreclosing.  By the time the Bank was done making and breaking promises, the Bank had let the statute of limitations to enforce the underlying note pass, and improperly took Mr. and Mrs. Martinez's home.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00.

6.     In the event that the Plaintiffs' claims against the Law Firm under the under the Colorado Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (the "**CFDCPA**") do not exceed the sum or value of $75,000.00, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

8.     Plaintiff Jesse Martinez is an individual who resides in the City and County of Denver, State of Colorado.

9.     Plaintiff Karen Martinez is an individual who resides in the City and County of Denver, State of Colorado.

10.    The Bank is a national banking association organized under 12 U.S.C. § 21 et seq.

11.     The Bank has a principal place of business located at 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104.

12.     The Bank maintains a registered agent in this state at 1560 Broadway, Suite 2090, Denver, Colorado 80202.

13.     The MBS Trustee is a national banking association organized under 12 U.S.C. § 21 et seq.

14.     The MBS Trustee has a principal place of business located at 8000 Nicollett Mall, BC-MN-H21N, Minneapolis, Minnesota 55402.

15.     The MBS Trustee maintains a registered agent in this state at 7700 E. Arapahoe Road, Suite 300, Centennial, Colorado 80112.

16.     The Law Firm is a California limited liability partnership.

17.     On information and belief, none of the equity partners in the Law Firm is a citizen of this state.

18.     The Law Firm is a "person", as that term is defined by Colo. Rev. Stat. § 5-16-103(11).

19.     The Law Firm is a "collection agency", as that term is defined by Colo. Rev. Stat. § 5-16-103(3)(d).

20.     The Law Firm has a principal place of business at 7700 E. Arapahoe Road, Suite 230, Centennial, Colorado 80112.

21.     Margaret T. Chapman is the public trustee for the County of Jefferson, State of Colorado, and is named in her official capacity (the "**Public Trustee**").

22.     The Public Trustee is the official responsible for performing non-judicial foreclosures in Jefferson County and is the trustee of the deed of trust described in this action.

23.     The Public Trustee has a principal place of business at 100 Jefferson County Parkway, Golden, Colorado 80419.

24.     The Public Trustee is named as a nominal defendant.

### FACTS

25.     Mr. and Mrs. Martinez have been married for thirty-seven years.  They lived in a modest home on modest incomes, and have raised three children together.

26.     For thirty-eight years, Mr. Martinez worked for the Federal Highway Administration, until he retired in 2012.

27.     Mrs. Martinez was a homemaker, and worked at Qwest as a secretary, until she suffered a back injury in a car accident in 2003.  Mrs. Martinez's car accident was followed by years of therapy and rendered her unable to work.

28.     Mr. and Mrs. Martinez are the owners of the real property commonly known as 11165 West Bowles Place, Littleton, Colorado 80127 (the "**Property**"), and legally described as:

> LOT 12, BLOCK 1, POWDERHORN FILING NO. 3, ACCORDING TO THE RECORDED PLAY THEREOF, COUNTY OF JEFFERSON, STATE OF COLORADO.

29.     On August 21, 1986, Mr. and Mrs. Martinez purchased the Property.  Mr. and Mrs. Martinez raised a family at the Property and have lived there ever since.

**The Martinezes' Series of Subprime Refinances**

30.     Mr. and Mrs. Martinez faced financial struggles, as many couples do, and found themselves unable to make their monthly mortgage payments.

31.     On January 14, 2002, Mr. and Mrs. Martinez sought protection under chapter 13 of the United States Bankruptcy Code.

32.     In the middle of their bankruptcy plan, Mr. and Mrs. Martinez went through a series of refinances arranged by their mortgage broker, Ace Mortgage Funding.

33.     On April 11, 2005, Option One Mortgage Corporation refinanced Mr. and Mrs. Martinez's fixed rate VA mortgage and second mortgage.  The two loans were refinanced into one loan totaling $158,275.00, due and payable on May 1, 2035, with an initial interest rate of 6.95%.

34.     This loan was an Adjustable Rate Mortgage ("**ARM**").  The rate was bound to increase after the first two years of the loan.  The interest rate on Mr. and Mrs. Martinez's ARM was not to exceed 12.95%.

35.     On September 15, 2005, Mr. and Mrs. Martinez refinanced their Option One Mortgage with Argent Mortgage Company, LLC.   The refinanced loan amount was $196,000.00, due and payable on October 1, 2035, with an initial interest rate of 8.150%. This new loan balance included charges of: $350.00 for an appraisal of the Property; a $5,844.00 origination fee to the broker; a $595.00 processing fee to the broker; a $550.00 underwriting fee to the lender; and $10,509.60 in closing costs.

36.     This loan was also an ARM.  The interest would adjust on the first day of October 2007, and every sixth months thereafter.  The interest rate was not to exceed 14.150%, and was bound to increase.

37.     On November 8, 2005, Mr. and Mrs. Martinez successfully completed their chapter 13 repayment plan and exited bankruptcy protection.

38.     On April 3, 2006, Mr. and Mrs. Martinez refinanced their Argent Mortgage loan with Mortgage Lenders Network, USA, Inc.  The refinanced loan amount was $222,300.00, due and payable on May 1, 2036, with an initial interest rate of 9.2500%.  This new loan balance included total settlement charges of $8,098.64.

39.     This loan was also an ARM.  The interest would adjust on the first day of May 2008, and every six months thereafter.  The interest rate was not to exceed 15.2500%.  The

loan was evidenced by a promissory note (the "**Note**") and secured by a deed of trust (the "**Deed of Trust**") encumbering the Property.

40.     Unlike the prior two refinances, this refinance did not occur during Mr. and Mrs. Martinez's bankruptcy plan.

41.     At some point, the original lender sold the Note and Deed of Trust to the mortgage backed security known as "Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX5".  The MBS Trustee is the trustee of this trust.

**The Mortgage is Transferred to The Bank**

42.     Mr. and Mrs. Martinez faced paying an unpayable mortgage.  The series of subprime refinances had increased their mortgage payment significantly, and they were prepared to leave their home and move on with their lives.

43.     On February 21, 2007, Mr. and Mrs. Martinez received a letter from the Bank notifying them that their loan was being service transferred from Mortgage Lenders Network to the Bank.  When a loan is service transferred, the prior mortgage servicer is effectively handing over the collection and application of payments to a new mortgage servicing company.  Everything about the original mortgage loan or refinance stays the same, the borrower simply sends his or her monthly payments to a new company.

44.     When Mortgage Lenders Network service transferred the loan to the Bank, there was a fees and charges balance of $2,320.99, meaning that all late fees, property evaluations, attorney's fees, and any other charges not included in the standard principal and interest payment, totaled $2,320.99.  At the time of the service transfer, Mr. and Mrs. Martinez had a contractual due date for payment of September 1, 2006, meaning that they had not made a full principal and interest payment since prior to September 1, 2006.

**The Bank Offers the Martinezes a Loan Modification**

45.     On January 29, 2008, the MBS Trustee filed a Notice of Election and Demand ("**NED**") with the Public Trustee for the County of Jefferson, State of Colorado.  An NED is a legal document that accelerates the balance of a mortgage loan so as to call the entire loan balance due.  If the borrower in question is unable to pay the entire balance of the mortgage loan or cure the default, the public trustee sells the home at a public auction to satisfy the full indebtedness secured by the home.

46.     Although Mr. and Mrs. Martinez did not cure the default or pay the balance of the loan, the MBS Trustee withdrew this NED on June 11, 2009.

47.     On February 2, 2010, the MBS Trustee filed another NED requesting the Jefferson County Public Trustee to sell the Property to satisfy the debt.

48.     On July 27, 2010, at the request of the Bank, Mr. and Mrs. Martinez provided county records to the Bank showing that all judgment liens on the Property were satisfied and that there were no liens attached to the Property.

49.     On or about the same time, the Bank offered to qualify Mr. and Mrs. Martinez for a Home Affordable Modification Program ("**HAMP**") loan modification.

50.     The HAMP program began in 2009 in response to the subprime mortgage crisis.  The United States Department of the Treasury (the "**Treasury**") established HAMP.  To qualify for a HAMP modification, borrowers were required to meet all of the requirements outlined by the Treasury.  Similarly, mortgage servicers were also required to meet the Treasury requirements.   Thus, all HAMP modification requests were submitted by borrowers, to mortgage servicers, and then to Fannie Mae, the designated financial agent of the Treasury.

51.     On July 29, 2010, Mr. and Mrs. Martinez filled out a "Request for Mortgage Assistance Form" and submitted it to the Bank.  This HAMP modification was not approved.

52.     On February 26, 2011, at the direction of the Bank, Mr. and Mrs. Martinez again applied for a HAMP modification.

53.     On March 31, 2011, the Bank approved Mr. and Mrs. Martinez for a trial HAMP modification.  The Bank promised to modify Mr. and Mrs. Martinez's loan permanently, provided that Mr. and Mrs. Martinez successfully complete three trial period payments.  Mr. and Mrs. Martinez were also obligated under the terms of the HAMP modification to provide the Bank with any documentation necessary for the final approval of the HAMP modification.

54.     On May 2, 2011, the Bank received and applied Mr. and Mrs. Martinez's first trial period payment to their Mortgage.

55.     On June 2, 2011, the Bank received and applied Mr. and Mrs. Martinez's second trial period payment to their Mortgage.

56.     On July 5, 2011, the Bank received and applied Mr. and Mrs. Martinez's third trial period payment to their Mortgage.

57.     On April 9, 2012, almost one year after the trial HAMP modification was approved, the Bank notified Mr. and Mrs. Martinez that the Bank had denied their HAMP modification.

58.     According to the Bank, the Bank denied the HAMP modification because Mr. and Mrs. Martinez failed to provide the Bank with documentation showing a clear title. However, Mr. and Mrs. Martinez made all of their HAMP trial period payments and had previously provided the Bank with documentation showing a clear title.  Further, the Bank already possessed all of the information concerning Mr. and Mrs. Martinez's title, as all judgment liens at issue had been paid off when Mr. and Mrs. Martinez refinanced their loan in 2006.

59.     On May 1, 2012, Mr. and Mrs. Martinez again provided county records to the Bank showing that all judgment liens on their home were satisfied.

60.     On June 21, 2012, the MBS Trustee filed an NED against the Property.

61.     On September 11, 2012, Mr. and Mrs. Martinez applied for a HAMP modification.

62.     On September 17, 2012, Mr. and Mrs. Martinez faxed information to the Bank regarding their respective incomes and a hardship statement concerning Mrs. Martinez's inability to work.

63.     On October 19, 2012, the Bank approved Mr. and Mrs. Martinez for a trial HAMP modification.   The Bank promised to modify Mr. and Mrs. Martinez's loan permanently, provided that Mr. and Mrs. Martinez complete three trial period payments successfully.

64.     Mr. and Mrs. Martinez were also obligated under the terms of the HAMP modification to provide the Bank with any documentation necessary for the final approval of the HAMP modification.

65.     The second trial period payment that Mr. and Mrs. Martinez made was reversed and the HAMP modification was considered broken.

66.     On February 28, 2013, the Bank denied Mr. and Mrs. Martinez's HAMP modification because they did not make all of the required trial period plan payments by the end of the specified trial period.

67.     On May 28, 2013, the Bank informed Mr. and Mrs. Martinez that the foreclosure sale date on the Property had been rescheduled to October 16, 2013.

68.     On May 30, 2013, the Bank initiated a new review for possible loan modification options.

69.     On July 2, 2013, the Bank denied Mr. and Mrs. Martinez's HAMP modification because they were unable to adjust the terms of the loan to achieve an affordable payment

based on a gross monthly income of $4,368.00.  Mr. and Mrs. Martinez's loan was also denied for all non-HAMP modification options because of the Net Present Value ("**NPV**") evaluation.

70.     On July 28, 2013, Mr. and Mrs. Martinez sent an appeal letter to the Bank to dispute the NPV calculation.

71.     On September 16, 2013, the Bank approved Mr. and Mrs. Martinez for a trial HAMP modification.   The Bank promised to modify Mr. and Mrs. Martinez's loan permanently, provided that Mr. and Mrs. Martinez complete three trial period payments successfully to be approved for a permanent modification under the HAMP guidelines.

72.     On November 1, 2013, the Bank received and applied Mr. and Mrs. Martinez's first trial period payment.

73.     On December 1, 2013, the Bank received and applied Mr. and Mrs. Martinez's second trial period payment.

74.     On December 2, 2013, Mr. and Mrs. Martinez provided county records to the Bank showing that all judgment liens on their home were satisfied.

75.     On January 2, 2014, the Bank received and applied Mr. and Mrs. Martinez's third trial period payment.

76.     On October 31, 2013, the Bank informed Mr. and Mrs. Martinez that the Bank would not be able to complete the permanent loan modification due to unresolved title issues.

77.     On January 28, 2014, Mr. and Mrs. Martinez again provided county records to the Bank showing that all judgment liens on their home were satisfied.

78.     On March 24, 2014, the Bank denied Mr. and Mrs. Martinez's permanent loan modification.

79.     On March 30, 2014, Mr. and Mrs. Martinez again provided county records to the Bank showing that all judgment liens on their home were satisfied and requesting that the Bank inform them if the Bank required more information.  The Bank did not reply.

80.     On April 17, 2014, the Law Firm, on behalf of the MBS Trustee, filed an NED against the Property.

81.     On August 11, 2014, Mr. and Mrs. Martinez informed the Bank that they would be filing a motion with the court to have a particular judgment lien removed from their title, as this lien was never theirs to begin with.

82.     On August 22, 2014, the Bank informed Mr. and Mrs. Martinez that their modification was denied because the Bank was unable to create an affordable payment based on a monthly gross income of $3,971.00.  In this letter, the Bank stated that it did not deny the modification because of the NPV calculation.

83.     Mr. and Mrs. Martinez appealed the denial of the modification.

84.     On September 22, 2014, the Bank acknowledged receipt of Mr. and Mrs. Martinez's denial appeal request.

85.     On September 23, 2014, the Bank informed Mr. and Mrs. Martinez that they were still not eligible for a permanent modification.

86.     On October 22, 2014, Mr. and Mrs. Martinez provided information to the Bank showing that their monthly gross income was $5,368.00.

87.     On November 7, 2014, the Bank acknowledged receipt of Mr. and Mrs. Martinez's request for a loan modification.

88.     On November 12, 2014, as required by HAMP guidelines, Mr. and Mrs. Martinez's daughter, Michelle Martinez, submitted a "Non-Borrower Occupant Certification Form" to the Bank.  This form stated that Michelle Martinez lived with Mr. and Mrs. Martinez and that she contributed $1,000.00 to monthly expenses.

89.     On February 11, 2015, the Bank informed Mr. and Mrs. Martinez that their loan modification application was not complete.  Specifically, Mr. and Mrs. Martinez had not yet provided the Bank with all requested documents.  However, Mr. and Mrs. Martinez had provided all of the requisite information to the Bank.

90.     On February 24, 2015, Mr. and Mrs. Martinez submitted an appeal request form to the Bank.

91.     On April 21, 2015, as required by HAMP guidelines, Mr. and Mrs. Martinez's daughter, Michelle Martinez, submitted a "Non-Borrower Occupant Certification Form" to the Bank.  This form stated that Michelle Martinez lived with Mr. and Mrs. Martinez and that she contributed $1,000.00 to monthly expenses.

92.     On April 23, 2015, the Bank informed Mr. and Mrs. Martinez that the Bank would not reconsider them for a loan modification.

93.     On May 8, 2015, the Bank informed Mr. and Mrs. Martinez that the Bank would not reconsider them for a loan modification.

94.     On September 8, 2015, Mr. and Mrs. Martinez submitted a request for a HAMP modification.

95.     On April 14, 2016, the Law Firm, on behalf of the MBS Trustee, filed an NED.

96.     On June 23, 2017, the Law Firm submitted a bid for the foreclosure sale.

97.     The bid reflects interest due and owing as of June 29, 2017 of $211,679.58.

98.     The bid indicates that no payment had been made for approximately 4,316 days.

99.     The bid indicates that the original default was more than eleven years prior to the sale date.

100.    The bid indicates that the statute of limitations had run prior to the sale date and the filing of the NED.

101.   On June 29, 2017, the Property was sold at foreclosure auction.

102.   The MBS Trustee was the purchaser at the foreclosure auction.

103.   On or about July 14, 2017, the Public Trustee for Jefferson County issued a deed conveying the Property to the MBS Trustee ("**PT Deed**").

104.   During the years and months that the Bank offered to modify their mortgage, Mr. and Mrs. Martinez could have left their home and started a new life in a new home.

105.   Mr. and Mrs. Martinez would have left their home and started a new life in a new home but for the Bank's continued promises to modify their mortgage.

106.   Had Mr. and Mrs. Martinez simply let the Property pass through foreclosure, the delinquency would not even be a blip on their credit today.

107.   But Mr. and Mrs. Martinez relied on the Bank's continued promises to modify their mortgages.

108.   Relying on the Bank's repeated promises was detrimental to Mr. and Mrs. Martinez.  They have suffered countless hours of stress and anguish in meeting the Bank's repeated demands.

109.   For more than a decade, the Bank has been promising to modify their mortgage, but has broken each one of those promises.

<u>**COUNT I**</u>
**(Breach of Contract against the MBS Trustee)**

110.   Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

111.   On numerous occasions, the Bank, as agent of the MBS Trustee, offered to modify Mr. and Mrs. Martinez's mortgage.

112.   Mr. and Mrs. Martinez accepted these offers through the Bank's preferred method of acceptance – performance.

113.    The acceptance was supported by consideration.

114.    The modification of Mr. and Mrs. Martinez's mortgage is a lawful and binding obligation of the MBS Trustee.

115.    The MBS Trustee, through the Bank as its agent, has breached the obligation to modify the mortgage by refusing to modify the mortgage.

116.    Mr. and Mrs. Martinez have been damaged in an amount to be proven at trial.

## COUNT II
**(Breach of Contractual Duty of Good Faith and Fair Dealing against the MBS Trustee)**

117.    Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

118.    Every contract in Colorado carries an implied duty of good faith and fair dealing.

119.    Both Mr. and Mrs. Martinez and the MBS Trustee had the common purpose of modifying the mortgage.

120.    Both Mr. and Mrs. Martinez and the MBS Trustee reasonably expected that, upon meeting the conditions outlined in the trial modifications, the Bank would modify the mortgage on behalf of MBS Trustee.

121.    The MBS Trustee, through the Bank as agent,  breached its duty of good faith and fair dealing when it failed to honor the HAMP modifications after Mr. and Mrs. Martinez fully performed by both making all of their required trial period payments and providing the Bank with information advising of a clear title.

122.    As a result of the MBS Trustee's breach of its duty of good faith and fair dealing, by and through its agent the Bank, Mr. and Mrs. Martinez have been damaged in an amount to be determined at trial.

## **COUNT III**
### **(Promissory Estoppel against the MBS Trustee)**

123.    Plaintiffs incorporate by reference the allegations of Paragraphs 1-106 as though fully set forth herein.

124.    The Bank, on behalf of the MBS Trustee, promised Mr. and Mrs. Martinez that it would modify their mortgage.

125.    The Bank should have reasonably expected Mr. and Mrs. Martinez to rely on these promises.

126.    Mr. and Mrs. Martinez reasonably relied on the Bank's promises to modify their loan and did not make efforts to move on or sell their home while they were waiting for a final modification to be approved.

127.    Relying on the Bank's promises was to Mr. and Mrs. Martinez's detriment.

128.    These promises must be enforced to avoid injustice.

129.    As a result of their reasonable reliance on the Bank's promise, Mr. and Mrs. Martinez have been damaged in an amount to be determined at trial.

## **COUNT IV**
### **(Intentional Infliction of Emotional Distress against the Bank)**

130.    Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

131.    The Bank engaged in extreme and outrageous conduct in its decade long relationship with Mr. and Mrs. Martinez.

132.    A reasonable member of the community would regard the Bank's decade of broken promises as atrocious, going beyond all possible bounds of decency, and utterly intolerable in civilized community.

133.    The Bank acted recklessly when it continued to offer and then deny loan modifications to Mr. and Mrs. Martinez.

134.    The Bank knew, or should have known, that a decade of failed promises would cause severe emotional distress in another person.

135.    Mr. and Mrs. Martinez suffered severe emotional distress as a result of the Bank's behavior.

136.    Mr. and Mrs. Martinez's emotional distress consists of highly unpleasant mental reactions, such as horror, grief, shame, humiliation, embarrassment, anger, disappointment, and worry.

137.    Mr. and Mrs. Martinez are entitled to damages in an amount to be determined at trial.

## COUNT V
### (Quiet Title against the MBS Trustee and Public Trustee)

138.    Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

139.    Mr. and Mrs. Martinez have not paid on the contractual balance of their loan since September of 2006.

140.    The Bank, on behalf of the MBS Trustee, accelerated Mr. and Mrs. Martinez's loan in 2008, when the Bank filed an NED against Mr. and Mrs. Martinez's property.

141.    Over six years have passed since the date of default on Mr. and Mrs. Martinez's loan.

142.    Over six years have passed since the date that the Note was accelerated by the Bank.

143.    The only loan payments that Mr. and Mrs. Martinez have attempted to make since September of 2006 have been trial period payments that were supposed to have resulted in a fully modified loan balance.

144.    Mr. and Mrs. Martinez did not intend to pay on the original loan balance.

145.     Instead, Mr. and Mrs. Martinez intended to pay only on a modified loan balance.

146.     The statute of limitations ran on the Note.

147.     As the statute of limitations has run on the Note, the Deed of Trust is no longer a lien against the Property.

148.     The Deed of Trust was not a lien against the Property at the time the Bank initiated the foreclosure.

149.     The PT Deed is either void or voidable.

150.     The PT Deed was ineffective to convey title to the Property.

151.     The Public Trustee is the trustee of the Deed of Trust and the grantor of the PT Deed and may claim some interest to the Property.

152.     Mr. and Mrs. Martinez are entitled to an order from this Court declaring that the PT Deed conveyed no title and Mr. and Mrs. Martinez are the fee simple owners of the Property, free and clear of all liens encumbering the Property by parties named herein, including the Deed of Trust.

### COUNT V
**(Violations of the CFDCPA against the Law Firm)**

153.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

154.     At all times material hereto, Plaintiffs were each a "consumer", as that term is defined under Colo. Rev. Stat. § 5-16-103(5).

155.     At all times material hereto, the security interest that the Law Firm was attempting to enforce was a "debt", as that term is defined under Colo. Rev. Stat. § 5-16-103(8)(a).

156.    At all times material hereto, the Law Firm was a "collection agency", as that term is defined under Colo. Rev. Stat. § 5-16-103(3)(d).

157.    The CFDCPA prohibits the use of any unfair or unconscionable means to collect or attempt to collect any debt, including, but not limited to, taking any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest.  Colo. Rev. Stat. § 5-16-108(1)(f).

158.    The Law Firm violated Colo. Rev. Stat. § 5-16-108(1)(f) by attempting and completing the foreclosure without right.

159.    The foregoing acts and omissions of the Law Firm constitute violations of the CFDCPA.

160.    Plaintiffs have suffered and continue to suffer actual damages as a result of the Law Firm's unlawful conduct.

161.    Plaintiffs are entitled to statutory and actual damages in an amount to be determined at trial.

162.    Plaintiffs are entitled to their reasonable attorney fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jesse and Karen Martinez pray for relief and judgment against the Bank, MBS Trustee, and the Law Firm as follows:

1.    An award of actual damages against the Bank, MBS Trustee, and the Law Firm, jointly and severally;

2.    An award of statutory damages against the Law Firm in the amount of $1,000.00;

3.    Attorney fees and costs as permitted by law or under agreement of the parties;

4.      A complete adjudication of the rights of all parties to this action with respect to the Property;

5.      A decree requiring the MBS Trustee and PT to set forth the nature of their claims, determining that the MBS Trustee and PT each have no interest, estate or claim of any kind whatsoever in the Property, forever barring and enjoining the MBS Trustee and PT from asserting any claim or title thereto, quieting the title of the Plaintiffs in and to the Property and adjudging that the Plaintiffs are the owners in fee simple and entitled to possession of the Property free and clear of the Deed of Trust; and for such other relief as to the Court may seem proper; and

6.      Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

Plaintiffs are entitled to and hereby demand a trial by jury.

Dated: January 25, 2018

Respectfully submitted,

/s/ Daniel J. Vedra
Daniel J. Vedra
Katherine Russell
Vedra Law LLC
1435 Larimer St. Suite 302
Denver, CO 80202
Phone: (303) 937-6540
Fax: (303) 937-6547
Email: dan@vedralaw.com
Email: kate@vedralaw.com

**CERTIFICATE OF SERVICE**

This is to certify that on January 25, 2018, a true and correct copy of the above and foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to the counsel of record.

In addition, the document was served on the following parties at the addresses listed below by U.S. Mail:

| | |
|---|---|
| Margaret T. Chapman<br>100 Jefferson County Parkway<br>Golden, Colorado 80419 | U.S. Bank, as Trustee<br>7700 E. Arapahoe Road, Suite 220<br>Centennial, Colorado 80112 |
| McCarthy & Holthus LLP<br>770 E. Arapahoe Road, Suite 230<br>Centennial, Colorado 80112<br><br>and via e-mail:<br>hshilliday@mccarthyholthus.com | |

/s/ Daniel J. Vedra
Daniel J. Vedra