**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No.  1:18-cv-00018-PAB-NYW**

JESSE MARTINEZ, an individual, and KAREN MARTINEZ, and individual

        Plaintiffs,

v.

WELLS FARGO BANK, N.A.d/b/a WELLS FARGO HOME MORTGAGE, INC., d/b/a AMERICA'S SERVICING COMPANY, N.A.; U.S. BANK  N.A., AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-EMX5, N.A.; MCCARTHY & HOLTHUS, LLP, a California LLP; and MARGARET T. CHAPMAN, as the Public Trustee for the County of Jefferson, State of Colorado

        Defendants.

---

## MOTION TO DISMISS FIRST AMENDED COMPLAINT

---

Pursuant to F.R.C.P. 12(b)(6), Defendants U.S. Bank, National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX5, ("U.S. Bank"), and Wells Fargo Bank, N.A. ("Wells Fargo) move to dismiss the First Amended Complaint ("FAC") as against them.

### PLAINTIFFS' ALLEGATIONS

The following facts are derived from the allegations in Plaintiffs' Amended Complaint, the documents referenced in the Amended Complaint, and the public record, and are set forth below solely for the purposes of this Motion:

On April 3, 2006, Plaintiffs refinanced their home loan with Mortgage Lenders Network, USA, Inc. ("Mortgage Lenders"). The loan amount was $222,300 due on May 1, 2036, and evidenced by a promissory Note and Deed of Trust (together, the "Loan"). *See* Exs. A and B, p.1; FAC, ¶ 38. Mortgage Lenders subsequently sold the Loan to U.S. Bank. FAC, ¶ 41.

About five months later, Plaintiffs defaulted on their payments. FAC, ¶¶ 3, 42. On or about February 21, 2007, the Loan was service transferred to Wells Fargo, at which time Plaintiffs were contractually due for their September 1, 2006 payment. FAC, ¶ 44.

On January 29, 2008, U.S. Bank recorded a Notice of Election and Demand ("NED"), which was later withdrawn on June 11, 2009. FAC, ¶ 45. On February 2, 2010, U.S. Bank recorded another NED, FAC, ¶ 47, which was recorded as withdrawn on August 4, 2011. *See* Ex. C.

On July 27, 2010, Wells Fargo allegedly asked that Plaintiffs apply for a loan modification under the Home Affordable Modification Program.[1] FAC, ¶ 49. Plaintiffs applied on July 29, 2010, but Wells Fargo denied their application. FAC, ¶ 51.

Approximately six (6) months later, on February 26, 2011, Plaintiffs applied for a modification again. FAC, ¶ 52. In response, Wells Fargo presented them a Trial Payment Plan on March 31, 2011 (the "First TPP"). FAC, ¶ 53; *see also* Ex. D.[2] The First TPP explains that "[t]he trial period offers you immediate payment relief (and could prevent a foreclosure sale)

---

[1] HAMP is a government program introduced in 2009 in response to the subprime mortgage crisis and is part of the Making Home Affordable Program. It was designed to help financially struggling homeowners avoid foreclosure by modifying their loans. *See* U.S. Dept. of Treasury Supplemental Directive 09-01, Apr. 6, 2009.
[2] *GFF Corp v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (The court may consider documents that are central to the plaintiff's claims and to which the plaintiff refers in the complaint).

while we process your papers to determine if you qualify for a permanent loan modification," among other things, and does not include any promises that completion of the Plan will result in a permanent modification. FAC, ¶ 53; *see also* First TPP, Ex. D, pp. 1, 3.

On April 9, 2012, Wells Fargo "denied the HAMP modification because Mr. and Mrs. Martinez failed to provide documents showing clear title." FAC, ¶¶ 57 and 58. While Plaintiffs allege that they had "previously provided Wells Fargo with documentation showing clear title," *see* FAC, ¶ 58 and 59, the public records identify a transcript of judgment lien by American Collection Systems, Inc., recorded on September 11, 2009 as document number 2009090996,[3] and a short form deed of trust and assignment of rents by Fairmont Specialty Insurance Managers, Inc., recorded on May 1, 2006 as document number 2006050485, neither of which had been released as of April 9, 2012. *See* Exs. E and F.[4]

On June 21, 2012, U.S. Bank recorded another NED, *see* FAC, ¶ 60, which was recorded as withdrawn on October 25, 2013. *See* Ex. G.

On September 11, 2012, Plaintiffs again applied for a modification, and Wells Fargo presented a second Trial Payment Plan on October 19, 2012 (the "Second TPP"). FAC, ¶ 60-63; *see also* Ex. H. The Second TPP required three payments of $1,705.18, and stated in bold "**[i]f each payment is not received by [Wells Fargo] in the month in which it is due, this offer will end and your loan will not be modified under the terms described in this offer.**" *See* Second TPP, Ex. H, p. 1. Plaintiffs acknowledge that they failed to make the second

---

[3] Plaintiffs appear to acknowledge the existence of the judgment lien in their Amended Complaint, alleging that they informed Wells Fargo on August 11, 2014 that they would be filing a motion to have a particular judgment lien removed from their title. FAC, ¶ 81.
[4] *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006) (the court may consider documents subject to judicial notice, such as court documents or matters of public record).

3

payment. FAC, ¶ 65. As a result, Wells Fargo denied Plaintiffs the modification they sought on February 28, 2013. FAC, ¶ 65-66.

On May 30, 2013, Plaintiffs allege that Wells Fargo initiated a new loan modification review. FAC, ¶ 68. According to the allegations, on July 2, 2013, Wells Fargo denied Plaintiffs' a modification because Wells Fargo was "unable to adjust the terms of the loan to achieve an affordable payment" and because of the "Net Present Value ("NPV") evaluation."[5] FAC, ¶ 69. Plaintiffs do not allege that either reason was incorrect. On July 28, 2013, Plaintiffs appealed. FAC, ¶ 71. On September 16, 2013, Wells Fargo presented Plaintiffs with a third Trial Payment Plan ("Third TPP"). *See* Ex. I.

Like the prior Plans, the Third TPP explains that "[t]he trial period offers you immediate payment relief (and could prevent a foreclosure sale) while we process your papers to determine if you qualify for a permanent loan modification," among other things, and does not include any promises that completion of the Plan will result in a permanent modification. *See* Third TPP, Ex. I, pp. 1, 3. The Third TPP also states that "…if you have a judgment placed on your property you may be required to pay off the lien. If you fail … to pay off a judgment lien as required, your modification may be denied even if you pay the trial period payments." *Id.* at 1.

On October 31, 2013, Wells Fargo denied the modification due to unresolved title issues. FAC, ¶¶ 76, 78. While Plaintiffs allege that they provided records showing title was clear months later (specifically, on December 2, 2013 and January 28, 2014), the public records identify the same American Collection Systems, Inc. transcript of judgment lien and the same

---

[5] The NPV calculation determines whether it is more profitable to the lender to modify the existing loan or foreclose. If the NPV result is "negative," the servicer is not required to offer the modification. Supplemental Directive 09-01, p. 4; *McInroy v. BAC Home Loan Servicing*, 2011 WL 1770974, at *20 (D. Minn. 2001).

short form deed of trust and assignment of rents by Fairmont Specialty Insurance Managers, Inc. that resulted in the denial following the First TPP, neither of which had been released as of October 31, 2013. *See* Exs. E and F; *see also, infra* n. 3.

On April 17, 2014, Defendant McCarthy & Holthus, LLP (the "Law Firm") recorded an NED, *see* FAC, ¶ 81, which was recorded as withdrawn on October 9, 2015. *See* Ex. J.

After requesting to be reviewed again, on August 22, 2014, Plaintiffs were denied a modification due to unaffordability. FAC, ¶ 82. Plaintiffs do not contend this denial was incorrect. Following an appeal, on September 23, 2014, Wells Fargo confirmed again that Plaintiffs were not eligible for a permanent modification. FAC, ¶ 83-85.

Less than two (2) months later, on November 12, 2014, Plaintiffs applied for another loan modification. FAC, ¶ 88. On February 11, 2015, Wells Fargo informed Plaintiffs that their application was not complete due to missing documents, and it was denied. FAC, ¶ 89-90. Plaintiffs dispute that documents were missing. *Id.* On February 24, 2015, Plaintiffs appealed the denial. FAC, ¶ 90. Plaintiffs do not allege how the appeal resolved.

Less than two (2) months later, on April 21, 2015, Plaintiffs applied for another loan modification. FAC, ¶ 91. On April 23, 2015 and May 8, 2015, Wells Fargo informed Plaintiffs that it would not reconsider them for a loan modification. FAC, ¶¶ 92 and 93. On September 8, 2015, Plaintiffs submitted another request for a HAMP modification. FAC, ¶ 94. Plaintiffs do not allege how this request resolved.

On April 14, 2016, the Law Firm, on behalf of U.S. Bank, recorded an NED. FAC, ¶ 95; *see* Ex. K. On June 23, 2017, the Law Firm submitted a bid for the foreclosure sale. FAC, ¶ 96.

*Id.* Plaintiffs allege that the bid indicated the original default was more than 11 years prior to the sale date and that the statute of limitations had run prior to the sale date the NED, *see* FAC, ¶ 99-100, but a plain reading of the NED shows otherwise. *See* Ex. L.

On June 29, 2017, the Property was sold at foreclosure auction to U.S. Bank. FAC, ¶ 101. On or about July 14, 2017, the Public Trustee for Jefferson County issued a deed conveying the Property to U.S. Bank. FAC, ¶ 103.

## STANDARD OF REVIEW

The Court should grant a motion to dismiss if, assuming the truth of the factual assertions made in the complaint, a plaintiff fails to state a viable claim as a matter of law. *See* Fed. R. Civ. P. § 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *see also Hemmann Mgmt. Servs. V. Mediacell, Inc*., 176 P.3d 856, 858 (Colo. App. 2007) (citing equivalent standard under Colorado law). For each claim alleged, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. (citing *Twombly*, at 555).

## ARGUMENT

### I.  The Statute Of Limitations Bars Most Of Plaintiffs' Claims.

With the exception of Plaintiffs' quiet title claim, which is premised on a 2017 foreclosure, Plaintiffs' claims are all based on conduct that occurred more than three (3) years before they filed suit. Plaintiffs' contract claims are subject to Colorado's three-year statute of limitations. C.R.S. § 13-80-101(2016). Plaintiffs' breach of promissory estoppel and intentional

infliction of emotional distress claims are subject to a two-year statute of limitations. C.R.S. § 13-80-102(1)(a)(i); CRS § 13-80-102. Plaintiffs' claims are based on allegations that Plaintiffs completed three TPPs between 2011 and 2014, but that Wells Fargo failed to permanently modify their Loan. *See* FAC, ¶¶ 71-85. The third and last TPP was offered in September 16, 2013 and denied for modification on October 31, 2013. *Id*. Because these events occurred beyond the three-year statute of limitations, Plaintiffs' claims are all time-barred.

> **II.   Plaintiff's Loan Modification Allegations Do Not Support Any Cause of Action.**

Neither the Note nor Mortgage require the lender to modify the Loan after the terms are consummated, nor does the covenant of good faith and fair dealing require contracting parties to renegotiate. Specifically, the Colorado Court of Appeals has held that the contractual duty of good faith and fair dealing does not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions. *Id*. at 1363; *Crown Life Ins. Co. v. Haag Ltd*., 929 P.2d 42, 46 (Colo. App. 1996); *Teleport, Inc. v. Ameritech Mobile Communications, Inc*., 637 N.W. 2d 782 (Wis. Ct. App. 2001). Plaintiffs fail to identify a single provision of the Note or Mortgage that U.S. Bank or Wells Fargo breached or that requires loan modification reviews.

Further, Plaintiffs are not parties to the servicer participation agreements between Wells Fargo and U.S. Bank, or Wells Fargo and the Federal National Mortgage Association ("Fannie Mae"), with respect to HAMP or other modification programs. Accordingly, Plaintiffs cannot enforce such agreements or "guidelines" with respect to loan modification. Participation in HAMP is a Treasury implemented program under which the mortgage lender agrees to

participate by entering into a service participation agreement with Fannie Mae. *U.S. Treasury, Supp. Directive* 09-01, April 6, 2009, p. 4; Agreement, at p.1.

An overwhelming majority of courts, including Colorado, have rejected any theory that borrowers like Plaintiffs are intended third party beneficiaries under the HAMP servicer participation agreement and or have a private cause of action to enforce HAMP regulations or modification programs through civil actions like this one. *See, e.g., George v. Urban Settlement Services*, No. 13-cv-01819-PAB-KUM, 2014 WL 4854576, *11 at fn. 20 (D. Colo. Sept. 30, 2014) ("[C]ourts considering the question have held that HAMP does not create a private right of action." ) citing *Nelson v. Bank of Am., N.A.*, 446 Fed. Appx. 158, 159 (11th Cir. 2011) (collecting cases); *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1068-69 (N.D. Cal. 2011) (HAMP does not obligate a servicer to modify loans in that it only requires the servicer to consider eligible loans for modification, and therefore the agreements are unenforceable); *Parks v. BAC Home Loan Servicing, L.P.*, No. 3:11 cv 541, 2011 WL 5239240, at *2 (E.D.Va. Nov. 1, 2011) (borrowers do not have a private cause of action to enforce HAMP regulations because borrowers are incidental beneficiaries, not third party beneficiary under HAMP); *Gale v. Arora Loan Servs.*, No. 1:11-CV-47 TS, 2011 WL 1897671 (D. Utah May 18, 2011).

Regardless, loan servicers have discretion to offer permanent modifications. *Supp. Treas. Directive* 09-01, at 25. Here, Plaintiffs failed to make the required payments under the Second TPP, which states in bold that "**[i]f each payment is not received by America' Servicing Company in the month in which it is due, this offer will end and your loan will not modified under the terms described in this offer.**" *See* Second TPP, Ex. H, p. 1. Accordingly, Wells Fargo's denial of the Second TPP provides no grounds for liability. With respect to the First and

Third TPPs, the allegations and pubic record show that the Property was encumbered with unresolved liens at the time Wells Fargo denied the modifications. FAC, 81; Exs. E and F. As the Third TPP states, "[i]f you fail to … pay off a judgment lien as required, your modification may be denied even if you pay the trial period payments." Ex. I. Accordingly, Wells Fargo's denial of the First and Third TPPs provide no grounds for liability either.

### III. Colorado's Credit Agreement Statute of Frauds Bars Plaintiffs' Modification Claims.

Whether under promissory estoppel or intentional infliction of emotional distress, claims premised on unwritten promises to modify a loan are not sustainable in Colorado. Plaintiffs allege that Wells Fargo made promises that it would approve Plaintiffs a loan modification if they made all the TPP payments and provided proper documents. *See* FAC, ¶¶ 124, 126. However, Colorado's credit agreement statute of frauds provides: "Notwithstanding any statutory or case law to the contrary ... no debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing...." C.R.S. § 38-10-124(2) (2017).

Colorado's credit agreement statute of frauds is broad and not only bars oral promises to lend or modify a loan, it also "'renders representations, warranties, or omissions in connection with credit agreements inoperative unless they are reduced to writing.'" *Wagner v. Universal Financial Group*, No. 09-cv-00038-PAB-BNB, 2010 WL 866079, at *3 (D. Colo. Mar. 5, 2010) (quoting *Norwest Bank Lakewood, N.A. v. GCC P'ship*, 886 P.2d 299, 302 (Colo. App. 1994)). Plaintiffs' claims are accordingly barred because only the final written loan modification agreement is enforceable. *Lang v. Bank of Durango*, 78 P.3d 1121, 1123 (Colo. App. 2003).

9

### IV. The Allegations Do Not Support Intentional Infliction of Emotional Distress.

First, intentional infliction of emotional distress under Colorado law requires proof that the defendant engaged in "extreme and outrageous conduct." *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo.App.2002), aff'd, 90 P.3d 228 (Colo. 2004). The allegations here do not support "extreme and outrageous conduct," just requests by one party to a bi-lateral, private contract to renegotiate the terms, and another party's consideration and ultimate rejection of those requests. *Mackall v. JPMorgan Chase Bank, N.A.*, No. 12CA1427, 2014 WL 4459624, at *8 (Colo. App. Sept. 11, 2014); *Ramsey v. Citibank, N.A.*, No. 10-cv-02653-WYD-CBS, 2011 WL 4485918, at *5 (D. Colo. Sept. 28, 2011 ("the level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high"); *Dawson v. Litton Loan Servicing, LP*, No. 12-cv-01334-CMA-KMT, 2013 WL 1283848, at *9-10 (D. Colo. March 28, 2013) (conduct consisting of allegations that bank accepted loan payments and then reneged on its promise not to foreclose, and instead commenced foreclosure proceedings the next day "does not rise to the level of conduct which may be characterized as 'atrocious and utterly intolerable in a civilized community'") (citations omitted).

Second, this claim is barred by Colorado's economic loss doctrine, because any claim premised on an obligation to modify contract terms are necessary controlled by contract law, not tort. Under Colorado law, "[a] breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie." *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000) (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995)). For a contract action and a tort action to coexist, the breach of the duty as to the tort claim must arise

10

independently of any contractual duties between the parties. *Id*. at 1264. This is because, under the economic loss rule, "a party suffering only economic loss from a breach of an express or implied contractual duty may not assert a tort claim for such breach absent an independent duty of care under tort law." *Id*. The allegations do not support the existence of any duty Wells Fargo owed to Plaintiffs independent of its duties arising under the Note and Deed of Trust.

### V. Plaintiffs' Quiet Title Claims Premised On The Running Of The Statute of Limitations Are Not Supported By The Allegations.

#### A. Allegations Attacking U.S. Bank's Title Do Not Sustain Quiet Title.

Under Rule 105, "[a] party may bring an action to obtain a complete adjudication of the rights of all parties thereto with respect to real property . . . the court in its decree shall grant full and adequate relief so as to completely determine the controversy and enforce the rights of the parties." C.R.C.P. 105. However, in a suit to quiet title, a plaintiff must recover on the strength of plaintiff's own title and not the alleged weakness of defendant's title, or even lack of title. *Hutson v. Agricultural Ditch & Reservoir Co.*, 723 P.2d 736, 738 (Colo. 1986). Thus, a plaintiff's quiet title action should be dismissed where the plaintiff-borrower seeks to "quiet title" to the property by attacking the mortgagee's interest, instead of seeking to prevail on the strength of plaintiff's own claim to unencumbered fee-simple title. *See Heaton v. Am. Brokers Conduit*, 496 F.App'x 873, 876 (10th Cir. 2012) (affirming the dismissal of a borrower's quiet title claim on grounds that the borrower defaulted on his loan and merely sought to attack defendants' interest in the property rather than prevail on his own claim to title.").

> B.  The Statute of Limitations on an Installment Contract Runs from the Maturity Date or the Date of Acceleration.

Plaintiffs contend that the statute of limitations on the lender's right to foreclose accrued when Plaintiffs missed their last installment payment under the original terms of the Note on or about September 2006. FAC, ¶ 140. Plaintiffs are incorrect as a matter of law. The statute of limitations on an installment debt accrues upon maturity, or when the lender chooses to "accelerate" the debt by calling all future installment payments due, and not when the borrower first misses a payment. *Castle Rock Bank v. Team Transit, LLC*, 292 P.3d 1077, 1079 (Colo. App. 2012).

The statute of limitations set forth in C.R.S. section 13-80-103.5(1)(a) provides that an action for the enforcement of rights set forth in a security instrument "shall be commenced within six years after the cause of action accrues and not thereafter." C.R.S. section 13-80-108(4) provides than an action to recover a debt, obligation, money owed or performance "shall be considered to accrue on the date such debt, obligation, money owed, or performance becomes due." "Hence, construing sections 13-80-103.5(1)(a) and 13-80-108(4) together, the statute of limitations for a debt owed pursuant to the rights set forth in a security instrument for the repayment of debt begins to run when the action accrues, which occurs on the date that the debt becomes due." *Hassler v. Account Brokers of Larimer County, Inc.*, 274 P.3d 547, 552 (Colo. 2012).

As recited above, the Note is payable in monthly installments, with all outstanding principal and interest due on the Maturity Date unless Wells Fargo elects to accelerate future payments and call the entire debt due sooner. Ex. A. The Note specifically provides that the bank was not required call the entire debt due just because the borrowers defaulted. Ex. A, p. 3,

par. 7(D) ("[e]ven if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.").

### C. The Initial Notices of Election To Sell Were Withdrawn, Rescinding Whatever Those Notices Accomplished.

"In the case of an acceleration provision exercisable at the option of the creditor, the creditor must perform some clear, unequivocal affirmative act evidencing his intention to take advantage of the accelerating provision." *Hassler v. Account Brokers of Larimer Cty.*, 274 P.3d 547, 553 (Colo. 2012) ("Hassler") (internal quotations and brackets omitted). A clear, unequivocal and affirmative act is necessary to "leave no doubt as to the [creditor's] intention and to apprise the [debtor] effectively of the fact that the option has been exercised." Id. (quoting 5 A.L.R 2d 968, §4).

Plaintiffs' alternative contention is that the debt was accelerated by the recording of the first NED in 2008, but that allegation does not support their theory as a matter of law. (FAC, at 45 and 142). The first NED did not purport to "clearly and unequivocal" accelerate the debt, and Plaintiffs (the borrowers) do not claim to have received any notice of debt acceleration from Wells Fargo upon which to base their quiet title claim. Regardless, as Plaintiffs acknowledge, the first NED was withdrawn on June 11, 2009, and the second NED was withdrawn on August 4, 2011 (because Plaintiffs wanted to be considered for a loan modification, and Wells Fargo could not foreclose on them at the same time). FAC, ¶ 46; Ex. C. Whatever Plaintiffs contend the first and second NEDs accomplished, withdrawing them necessarily rescinded it. The statute of limitations had not run by the time foreclosure proceeded last year.

13

    D. <u>Regardless, Equity Tolled The Statute of Limitations In Light of Plaintiffs' Multiple Loan Modification Requests</u>**.**

The doctrine of equitable tolling prevents the unfair result Plaintiffs seek. *See Deutsche Bank Trust Company Americas v. Samora*, 321 P.3d 590, 596 (Colo. App. 2013) (citing *Shell W. E&P v. Dolores Cnty. Bd. of Comm'rs,* 948 P.2d 1002, 1007 (Colo. 1997). Dual tracking is a process through which a loan servicer processes a borrower's application to modify their loan while simultaneously pursuing foreclosure. Federal and state law bar this practice. *See* 12 C.F.R. 1024.41(g) and C.R.S. 38-38-103.2(6). As Wells Fargo and U.S. Bank were prohibited from pursuing a foreclosure while reviewing Plaintiffs' modification requests, the statute must be equitably tolled to prevent injustice. Specifically, according to the allegations, Plaintiffs submitted over five requests for modification, and filed two appeals, between July 2010 and November 2014, during which they were offered three separate Trial Payment Plans. FAC, ¶¶ 51-58. Accordingly, the statute of limitations was equitably tolled during this period.

    E. <u>Plaintiffs' Voluntary Payment Restarted The Statute of Limitations.</u>

Plaintiffs' voluntary payment on January 2, 2014, which is alleged in the Amended Complaint, restarted the statute of limitations, as argued in McCarthy & Holthus, LLP's Motion to Dismiss filed on February 8, 2018 (Document 24), p. 12. FAC, ¶ 75. For efficiency reasons, U.S. Bank and Wells Fargo expressly adopt that portion of McCarthy & Holthus, LLP's Motion to Dismiss as if set forth herein.

    F. <u>The Allegations Sustain Estoppel of Plaintiffs' Claims.</u>

Under Colorado law, equitable estoppel consists of two elements: "the party to be estopped must know the facts and either intend the conduct to be acted on or so act that the party asserting estoppel must be ignorant of the true facts, and the party asserting estoppel must

14

rely on the other party's conduct with resultant injury." *SDJ Insurance Agency, L.L.C. v. American National Insurance Company*, No. 00-1441 (10th Cir. June 11, 2002) citing *Committee for Better Health Care v. Meyer*, 830 P.2d 884, 891-92 (Colo.1992). Plaintiffs' allegations challenging the foreclosure on grounds that the statute of limitations had run should be barred on grounds of estoppel, as Plaintiffs were well aware of their purported claims against U.S. Bank when the foreclosure proceeded, and U.S. Bank relied on Plaintiffs' acquiescence in proceeding. The fact that Plaintiffs were aware of their purported claims is highlighted by the fact that Plaintiff Jesse Martinez identified "claims against Wells Fargo and America's Servicing Co for illegal foreclosure and mortgage abuse procedures" in his bankruptcy schedules, p. 21, par. 33, filed on August 10, 2016 in the U.S. Bankruptcy Court, District of Colorado (Case No. 16-17901-KHT). As Plaintiffs knew of their claims, but failed to act on them until after the sale, they should be estopped from raising them now.

## CONCLUSION

WHEREFORE, for the foregoing reasons, U.S. Bank and Wells Fargo respectfully request that the Court enter an Order dismissing Plaintiffs' Amended Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

DATED: February 20, 2018.

        */s/Stephanie Kanan*
Jessica E. Yates, #38003
Stephanie A. Kanan, #42437
SNELL & WILMER L.L.P.
1200 Seventeenth Street
Suite 1900
Denver, CO 80202-5854
Phone: (303) 634-2000
Fax: (303) 634-2020
Email: jyates@swlaw.com
Email: skanan@swlaw.com
***Counsel for U.S. Bank, National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX5, and Wells Fargo Bank, N.A.***

## CERTIFICATE OF SERVICE

This is to certify that on February 20, 2018, a true and correct copy of the above and foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to the counsel of record.

Daniel J. Vedra, Esq.
Katherine Russell, Esq.
VEDRA LAW LLC
1435 Larimer Street, Suite 302
Denver, CO 80202
Telephone: (303) 937-6540
Facsimile: (303) 937-6547
Email: dan@vedralaw.com
Email: kate@vedralaw.com
***Attorneys for Plaintiffs Jesse Martinez and Karen Martinez***

        */s/Sandy Braverman*
Sandy Braverman

4840-1944-5339