**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  1:18-cv-18-PAB-NYW

JESSE MARTINEZ, an individual, and KAREN MARTINEZ, an individual,

　　　　Plaintiffs,

v.

WELLS FARGO, National Association d/b/a WELLS FARGO HOME MORTGAGE INC. d/b/a AMERICA'S SERVICING COMPANY, a national banking association; et al,

　　　　Defendants.

---

**REPLY IN SUPPORT OF MOTION OF MCCARTHY & HOLTHUS, LLP
TO DISMISS COMPLAINT**

---

Defendant McCarthy & Holthus, LLP (the "Firm") hereby moves the Court for an order dismissing the Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

## I.　　INTRODUCTION

Plaintiffs Jesse Martinez and Karen Martinez ("Plaintiffs") seek to unwind a foreclosure sale completed and approved in accordance with Colorado law.   While Plaintiffs do not challenge the foreclosure process they do seek to attack the completed foreclosure sale.  Plaintiffs concede the Firm obtained an order authorizing the sale of the property located at 11165 Bowles Place, Littleton, Colorado (the "Property") and an order terminating the automatic stay from the United States Bankruptcy Court, District of Colorado (the "Bankruptcy Court"), expressly authorizing the holder to proceed with the foreclosure sale and to take possession of the Property. [Motion, Exhibits 5 and 7]  Likewise, Plaintiffs do not dispute the sale was approved by the Jefferson County District Court (the "State Court") [Exhibit 6].

1

Plaintiffs spend a significant portion of their response addressing whether or not the Firm is a collection agency under Colorado's Fair Debt Collection Practices Act ("CFDCPA"). While the issue is interesting and subject to debate, it misses the point. Plaintiffs cannot and have not stated a claim against the Firm because the statute of limitations has not yet expired and Plaintiffs waited too long to challenge the sale. Therefore, since the claim against the Firm is inextricably intertwined with the foreclosure, which was completed and approved in accordance with state law, the federal court lacks jurisdiction over the claim and the claim must be dismissed. *Dillard v. Bank of New York*, 476 Fed. Appx. 690, 691 (10th Cir. 2012)

## II.     LEGAL ARGUMENT

### A. Payments under a Trial Payment Plan Are Voluntary Payments for Purposes of the Statute of Limitations

Plaintiff's claim against the Firm is premised upon the mistaken belief the statute of limitations to enforce the note and deed of trust expired before the Firm initiated the foreclosure of the Property through the public trustee. In essence, Plaintiffs contend the Firm violated C.R.S. § 5-16-108(1)(f) because it did not have the "present right to possession of the property claimed as collateral through an enforceable security interest" due to expiration of the statute of limitations.

In order to stop the foreclosure of the Property and in an effort to save their home, Plaintiffs accepted the servicer's offer to enter into a trial plan and to make trial plan payments under the Home Affordable Modification Program. Plaintiffs admit several partial payments were made as part of trial modification plans between 2011 and 2014 and were applied to their mortgage but now contend they were not voluntary payments at all. [FAC, ¶¶ 54-56, 65, 72-75] Plaintiffs allege the payments were not on the original debt but were meant to apply to a modified loan balance. They also contend the payments were conditioned upon the servicer's promise to modify the loan.

Plaintiffs' characterization of the payments as being anything other than voluntary payments defies logic and contradicts the very terms of the trial plan. Attached hereto as Exhibit 8 is one of the offers sent by the servicers to Plaintiff on March 31, 2011. To accept the offer, the letter stated the Plaintiffs need to send a monthly trial period payments instead of normal monthly mortgage payments as provided in the offer letter. Relevant portions of the offer letter are set forth below:

> The terms of your trial period plan below are effective on the day you make your first trial period payment, provided you have paid it on or before May 1, 2011. You and we agree that:
>
> **We will not proceed to the foreclosure sale during the trial period, provided you are complying with the terms of the trial period plan: . . .**
>
> - You agree that the *servicer will hold the trial period payments in an account until sufficient funds are in the account to pay your oldest delinquent monthly payment*. You also agree that the servicer will not pay your interest on the amounts held in the account. [Emphasis added]

[Exhibit 8, p. 5]

By sending trial payments to the servicer, the Plaintiffs agreed the payments could be applied to the loan and expressed their intent to keep their home and to hopefully modify their loan through a permanent loan modification. To be sure, the Plaintiffs would have cried foul had the servicer proceeded with the non-judicial foreclosure after Plaintiffs made trial plan payments but before a decision was made on a permanent loan modification or an appeal of a denial of a permanent loan modification.[1]

---

[1] The Consumer Financial Protection Bureau ("CFPB") promulgated rules to prohibit "dual tracking" or the practice of a servicer pursuing a foreclosure while considering a borrower's loss mitigation alternatives. 12 C.F.R. § 1024.41(g) and Comment 41(g). Generally, a servicer cannot "move for a foreclosure judgment [including a dispositive motion like a motion for default judgment, on the pleadings or summary judgment] or order of sale, or conduct a foreclosure sale"

In 2014, the Colorado Supreme Court reiterated the requirements for a voluntary partial post-default payment to re-set the statute of limitations. The payment must be a (1) conscious voluntary act; and (2) payment must be made from debtor to creditor. C.R.S. § 13-80-114 and *Hickerson v. Vessels*, 316 P.3d 620 (Colo. 2014). The Colorado Supreme Court stated, in relevant part, the following:

> The partial payment doctrine has been part of our common law jurisprudence since at least 1883 when we decided *Buckingham v. Orr., 6 Colo. 587, 589-90 (Colo. 1883)*. In Colorado, under this doctrine, where a debtor voluntarily makes a payment, the payment constitutes a promise to pay the remaining debt and operates to restart the statute of limitations period. *Buckingham, 6 Colo. at 589-90*; *Dodge v. East, 100 Colo. 36, 64 P.2d 1270, 1271 (Colo. 1937)* ("[V]oluntary payments made by the debtor [interrupt] the operation of the statute of limitations.");

*Hickerson* at 619.

The Colorado Court of Appeals also addressed the issue of voluntary payments in *Drake v. Tyne*r, 914 P.2d 519 (Colo. App. 1996). In *Drake*, the borrower filed a complaint to have a note and deed of trust declared invalid due to the running of the statute of limitations. Borrower sent payments to the lender but did not designate to which loan the payments should be applied. Creditor applied the payments to the oldest loan. Borrower contended the payments should have been applied to a different loan as there were multiple debts owed to the creditor. The trial court granted the borrower's summary judgment motion to extinguish the debt and the creditor appealed. *Drake* at 522. The Court of Appeals reversed the trial court's ruling and held "when a creditor on multiple debts applies an undesignated partial payment to a debt for which the statute of limitations

---

until the application has been denied, the appeal process is not available, the appeal was denied, the borrower rejects the loss mitigation options offered, or the borrower does not perform as required under the loss mitigation agreement. C.R.S. 38-38-103.2 also prohibits dual tracking.

has not yet run, the payment tolls the statute of limitations on that debt." *Drake* at 523. The Court found that partial payment alone was sufficient to toll the statute of limitations and each subsequent payment caused the statute of limitations to run anew. *Id.*

Plaintiffs' reliance on *Van Diest v. Towle,* 116 Colo. 204, 179 P.2d 984 (1947) is misplaced. In *Van Diest*, the Court held an intent to *revive* a debt must be clear and unequivocal to start the statute of limitations anew. *Van Diest* at 984. The Court of Appeals in *Drake* distinguished *Van Diest* as the statute of limitations in *Drake* had not yet expired when the voluntary payments were sent to the creditor and applied to the indebtedness. *Drake* at 522. In other words, no revival of the debt was needed since the voluntary payments alone renewed the limitations period. *Id.*

Plaintiffs contend the loan was accelerated on December 28, 2006 when the first foreclosure was initiated. While the Firm disagrees with this characterization of the facts, for purposes of this motion it does not matter. The statute of limitations based upon the 2006 acceleration date would have been December 28, 2012, in the absence of voluntary payments, bankruptcies, rescission of the acceleration or other tolling events. Plaintiffs made partial payments that were applied to the loan as early as May 2, 2011 and as late as January 2, 2014. [FAC, ¶¶ 54 and 75] The undisputed facts demonstrate Plaintiffs voluntarily made payments on the loan in order to stop the foreclosure and in hopes of obtaining a permanent modification, thereby re-starting the statute of limitations. Accordingly, the complaint fails to state a claim.

B. The Firm Had a Present Right To Proceed with the Non-Judicial Foreclosure.

The issue before the Court is whether the Firm was authorized to complete the foreclosure sale. Plaintiffs have not and cannot dispute the basic facts in this case. The State Court authorized the foreclosure sale of the Property. Similarly, the Bankruptcy Court granted relief from stay in

order for the servicer to complete the foreclosure and to take possession of the property.  Neither of these orders were challenged prior to the completion of the foreclosure.  Moreover, there are no allegations these orders were obtained fraudulently or that the Firm proceeded with the foreclosure while the orders were stayed.  Instead, Plaintiffs sidestep the issue by saying a Rule 120 order is not final and that neither an order authorizing sale nor the order granting relief from stay be given preclusive effect.  Again, Plaintiffs miss the mark.

The district court addressed the authorization to proceed with a non-judicial foreclosure in *Yokomizo v. Deutsche Bank Sec., Inc.*, 2011 U.S. Dist. Lexis 12218 (D. Colo. Oct. 21, 2011), *aff'd* 2011 U.S. Dist. Lexis 137638 (D. Colo. Nov, 30, 2011).  In *Yokomizo*, Magistrate Judge Mix dismissed the Plaintiff's Complaint alleging violations of the Federal Fair Debt Collection Practices Act (the "FDCPA") and various state law claims relating to foreclosure proceedings. *Yokomizo* at **18-19   While the court recognized the FDCPA does expand its reach to enforcers of security interests, the court declined to interfere with the completed foreclosure sale.  The court ruled plaintiff could not state a claim under 15 U.S.C. § 1692f(6)(A) because the state court entered an order authorizing sale which granted the servicer the right to possess and to sell the property. *Yokomizo* at **16-17.

Similar to *Yokomizo*, the foreclosure sale was completed and approved prior to the initiation of the lawsuit against the Firm.  Accordingly, Plaintiffs' claim based upon C.R.S. § 5-16-108(1)(f) (which is fashioned after the federal statute) likewise fails as a matter of law.

C.  The *Rooker-Feldman* Doctrine Prohibits the Court from Unwinding the Sale and Requires Dismissal of the Claim.

Plaintiffs' opposition is premised on the assumption that Colorado foreclosure sales are never final because Rule 120 orders authorizing foreclosure sales are not appealable.  Thus,

Plaintiffs argue Colorado foreclosure sales may be challenged in subsequent litigation, even if the litigation is initiated after the sale is approved by the State Court.  The Firm submits the Plaintiffs' claim is contrary to Colorado law.  Moreover, the request by the Plaintiffs to unwind a lawfully completed foreclosure sale and to find the Firm liable in connection with that sale is an impermissible attack on Rule 120 foreclosure proceedings.

Based upon its unique law, Colorado has long held that once a foreclosure sale is finished, the court "may not set aside a completed foreclosure sale absent a finding of fraud, deceit, collusion or that a party was misled by the public trustee." *Mount Carbon Metro. Dist. v. Lake George Co.*, 847 P.2d 254, 256 (Colo. App. 1993).  *See also Johnson v. Smith*, 675 P.2d 307 (Colo. 1984). Once sold, the foreclosure is final and all of the owner's right title and interest to the land is extinguished.  C.R.S. § 38-38-501, *et, seq.; Mount Carbon*, 847 P.2d at 256.

Plaintiff requests the Court to dismiss the claim against the Firm as it is a direct attack on the validity of foreclosure sale which is prohibited by the *Rooker-Feldman* Doctrine.  "The *Rooker-Feldman* doctrine established, as a matter of subject-matter jurisdiction, that only the United States Supreme Court has appellate authority to review a state court decision. " *Merrill Lynch Bus. Fin. Svcs., 363 F.3d at 1074-75, citing  Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *See also 28 U.S.C. § 1257(a).* The doctrine "precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291-92 (2005).

The Tenth Circuit Court of Appeals addressed the applicability of the *Rooker-Feldman* doctrine to Colorado non-judicial foreclosure sales.  *Mayotte v. U.S. Bank Nat'l Ass'n,* 883 F.3d

1169 (10th Cir. 2018).   The servicer in *Mayotte* initiated a non-judicial foreclosure of the borrower's property.   The servicer sought and obtained an order authorizing sale in accordance with C.R.C.P. 120.   Prior to the foreclosure sale, the borrower filed claims against the servicer in the federal district court arising from the servicing of the loan.   She alleged the servicer told her to skip payments in order to secure a loan modification, failed to give her a loan modification, fabricated documents and misapplied payments over a period of several years. She alleged violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq*. ("RESPA") and the FDCPA, 15 U.S.C. § 1692 *et seq*.   Plaintiff sought damages, cancelation of the loan documents, and quiet title of her home.   The servicer filed a motion to dismiss which was granted by the district court.   The court dismissed the RESPA claim for failure to state a claim.   The remaining claims were dismissed pursuant to the *Rooker-Feldman* doctrine because the district court found the borrower was effectively asking the court to unwind the Rule 120 proceedings.   *Mayotte* at 1171.

The Tenth Circuit affirmed dismissal of the RESPA claim but reversed the trial court's dismissal of the remaining claims and remanded for further proceedings.   *Mayotte* at 1176.   The Court declined to apply the *Rooker-Feldman* Doctrine to the claims because the borrower's complaint was not a challenge of the Rule 120 proceedings or the order authorizing sale entered by the state court.   *Mayotte* at 1176.   Instead, the allegations in the Complaint described conduct that arose prior to the foreclosure proceedings.   The Court left for another day the issue of whether the *Rooker-Feldman* Doctrine applies to a completed foreclosure sale that has been approved by the state court.   The Court also took no position with respect to the merits of the borrower's claims and expressly left for the district court the issue of whether the Rule 120 proceedings have preclusive effect on the resolution of the borrower's claims.   *Mayotte* at 1175, footnote 3.

Unlike *Mayotte*, the sole claim against the Firm in this case allegedly arose upon the completion of the foreclosure sale and not before.  Also, Plaintiffs' First Amended Complaint seeks to unwind the completed sale as they are asking for a declaration that the deed of trust was not a lien against the Property when the foreclosure was initiated, is no longer a lien against the Property, the public trustee deed conveyed no title to the purchaser and Plaintiffs are the fee simple owners of the Property. [FAC, ¶¶147-148]  Plaintiffs' claim for money damages against the Firm is premised upon the allegedly unlawful foreclosure.  Plaintiffs allege the Firm did not have the right to foreclosure and take possession of the Property due to the expiration of the statute of limitations.  Plaintiffs did not, however, seek affirmative relief prior to the sale.

In cases distinguishable from *Mayotte*, the Tenth Circuit has repeatedly upheld the application of the *Rooker-Feldman* when a plaintiff seeks to unwind a completed foreclosure sale. In *Dillard v. Bank of New York*, 476 Fed. Appx. 690, 691 (10th Cir. 2012), a borrower filed a complaint alleging various statutory and constitutional violations by the defendant bank. In determining whether the district court could hear the claims, the trial court observed that several of the claims challenged the state foreclosure and eviction proceedings.  *Id.*  The district court adopted the magistrate judge's ruling and dismissed the lawsuit with prejudice.  The Tenth Circuit affirmed the dismissal based upon lack of jurisdiction as the borrower "unquestionably sought review and rejection of the state court foreclosure and eviction proceedings."  *Id.* at 691-692 (record citations omitted).  The Court noted the claims in Dillard would have required the federal court to unwind the foreclosure proceedings, thus triggering *Rooker-Feldman*.

In *McDonald v. JP Morgan Chase Bank, N.A.*, the plaintiff filed a federal lawsuit, which sought to invalidate the underlying state court foreclosure before the sale occurred.  No. 12-cv-

02749-MSK, 2014 Lexis 11574, *2-4 (D. Colo. Jan. 30, 2014). The trial court dismissed the claims

because the foreclosure sale became final during the pendency of the federal court case. *Id.* The

Tenth Circuit upheld the district court's application of the *Rooker-Feldman* doctrine, *citing Dillard*

and stating "Rooker-Feldman does apply to the foreclosure judgment." *McDonald v. J.P. Morgan*

*Chase Bank*, N.A., No 15-1168, 2016 WL 4547605 at *2 (10th Cir. Aug. 31, 2016). See also

Zeller v. Ventures Trust 2013-I-NH, No. 15-cv-01077-PAB-NYW, 2016 WL 745373, *4-8 (D.

Colo. February 1, 2016) (court applied Rooker-Feldman doctrine to preclude a plaintiff's claims

challenging a Rule 120 proceeding where the claims were filed less than a week prior to the

foreclosure sale of the property) and *Driskell v. Thompson*, 971 F.Supp.2d 1050 (D. Colo. 2013)

(court applied the Rooker-Feldman doctrine where a foreclosure sale, in accordance with Rule

120, already had occurred).

## CONCLUSION

For these reasons, the Firm requests that this Court dismiss Count V, with prejudice, and

award attorneys' fees and costs to the Firm in accordance with C.R.S. § 5-16-113(2).

DATED: March 25, 2018

MCCARTHY & HOLTHUS, LLP

By:   */s/ Holly R. Shilliday*
Holly R. Shilliday, #24423
7700 E. Arapahoe Road, Suite 230
Centennial, Colorado 80112
Telephone:  (877)
hshilliday@mccarthyholthus.com

***Attorneys for Defendant McCarthy & Holthus,***
***LLP***

10

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of March, 2018, a true and correct copy of the foregoing document was filed and served electronically through this Court's CM/ECF system or served via U.S. Mail, first class postage prepaid, upon the following:

Katherine Russell, Esq.
Daniel Vedra, Esq.
Vedra Law LLC
1435 Larimer St., Suite 302
Denver, CO 80202

Jessica Yates
Snell & Wilmer L.L.P.
1200 17th Street, Suite 1900
Denver, Colorado 80202

/s/ *Holly R. Shilliday*
for McCarthy & Holthus, LLP