**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No.  1:18-cv-00018-PAB-NYW**

JESSE MARTINEZ, an individual, and KAREN MARTINEZ, an individual,

    Plaintiffs,

v.

WELLS FARGO BANK, N.A. d/b/a WELLS FARGO HOME MORTGAGE, INC., d/b/a AMERICA'S SERVICING COMPANY, N.A.; *et al*.

    Defendants.

---

**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

---

Defendants U.S. Bank, National Association and Wells Fargo Bank, N.A. ("Wells Fargo) (collectively, "Defendants") reply in support of their Motion to Dismiss (Doc. 32).

**ARGUMENT**

    **I.    Plaintiffs' Claims Accrued No Later Than October 31, 2013.**

Plaintiffs argue that Defendants have not identified "the date of accrual for either the tort or contract claims." *See* Doc. 43, p. 5.  Plaintiffs are wrong.  As Defendants explained, the allegations are that Defendants denied the last of Plaintiffs' loan modifications on October 31, 2013.  *See* Doc. 32, p. 7; *see also* FAC ¶¶ 71-85.  They filed suit more than four (4) years later, on January 3, 2018.  Because all of Plaintiffs' claims (with the exception of their quiet title claim, Count V) are premised on Defendants' loan modification denials, the date Plaintiffs acknowledge being advised that the last of their applications was denied is when their claims accrued.  As all of Plaintiffs' claims are subject to a statute of limitations of three (3) years or less, they are all time-barred.

1

None of the allegations of conduct by Defendants occurring after October 31, 2013 purport to support any claims for relief (with the exception of their quiet title claim, Count V), and Plaintiffs have not argued otherwise. Rather, after October 31, 2013, Defendants are alleged to have denied Plaintiffs' applications either because the modification was not affordable or because their application was not complete, and Plaintiffs do not contend that either reason was false or otherwise amounted to a breach of contract, broken promise, or intentional infliction of emotional distress. *See* FAC ¶¶ 82, 85, 89, 92. Accordingly, these allegations provide no basis for liability under any theory.

## II.     The Continuing Violation Doctrine Does Not Apply.

Plaintiffs incorrectly invoke the "continuing violation" doctrine, arguing that "[e]very time Wells Fargo attempted to collect or foreclose on the original, unmodified loan" it amounted to a "continuing violation" of Defendants' alleged obligation to modify that loan for purposes of accrual. In addition to the fact that Plaintiffs have not pled this theory, Plaintiffs' argument conflates successive wrongs with the doctrine that brings time-barred acts within the statute of limitations when they can be "linked" with conduct that is within the statute of limitations.

While Colorado courts have observed that when a contract requires continuing performance, a new claim accrues for each breach (and the statute of limitations runs with respect to each breach), breaches that are outside the statute of limitations remain time-barred. *See, e.g., Neuromonitoring Assoc's v. Centura Health Corp.*, 351 P.3d 486, 492 (Colo. App. 2012); *St. Paul Fire and Marine Ins. Co. v. North River Ins.*, No. 10-cv-2936, 2012 WL 4464380 at * 5(D. Colo. Sept. 27, 2012). This principle is distinct, however, from the "continuing violation doctrine," which allows claimants to sue for a time-barred act by *linking it* with conduct

that occurred within the statute of limitations. *See, e.g., Neuromonitoring Assoc's,* 351 P.3d at 498-49 (discussing *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 405 (Colo. App. 2000)*; Harmon v. Fred S. James & Co. of Colo., Inc.*, 899 P.2d 258, 261-62 (Colo. App. 1994). Colorado courts have limited this doctrine to employment discrimination cases, so Plaintiffs cannot invoke it. *See In Davidson v. Bank of America, N.A.*, No. 14-cv-1578, 2016 WL 922872 at *2  (D. Colo. March 10, 2016); *see also Polk*, 5 P.3d at 405; *Harmon*, 899 P.2d at 261-62.

Regardless, Defendants' enforcement of the original loan terms cannot amount to a "continuing violation" of Defendants' alleged failure to modify that loan, or Plaintiffs' claim would survive through the loan's 30 year maturity date, which would be absurd.  Instead, Plaintiffs' claims must logically run from when they knew Defendants denied their modification, which was October 31, 2013 according to the allegations the Court must accept as true.  *See* FAC ¶¶ 71-85; *see also* C.R.S. § 13-80-108(1) and (6) (cause of action is considered to accrue on the date the injury and its cause are known or the date a breach is discovered).

While Plaintiffs also argue that Defendants "made a series of promises" that Defendants never fulfilled, Plaintiffs do not identify where these promises are pled with the exception of the content of the Trial Payment Plans (the "TPPs"), the last of which Defendants denied on October 31, 2013.  *See* FAC ¶¶ 71-85.  As Plaintiffs have not identified any other promise that Defendants allegedly broke, their generic references to "promises" that occurred "over a decade" cannot be credited as true for purposes of defeating dismissal.

### III.    There Are No Allegations Supporting Equitable Tolling.

There are no factual allegations susceptible to proof that could toll the normal operation of the statute of limitations, and no reason for the Court to speculate that such allegations could

be pled, much less proven. Accordingly, Plaintiffs can take no refuge in the argument that there is "a dispute of fact that may not be determined on a motion to dismiss," because they have not alleged any facts that could be disputed. *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036 (10th Cir. 1980) (holding that when the dates alleged in the complaint demonstrate that the claim has extinguished, it is plaintiff's burden to establish a factual basis for tolling the statute).

When applicable, the doctrine of equitable tolling allows claimants to assert claims "after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Heil v. Wells Fargo Bank*, 298 F. App'x 703, 706 (10th Cir. Oct. 9, 2008) (unpublished decision) (quoting *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d. 703, 706-08 (11th Cir. 1998)). But it is "only available when [litigants] diligently pursue [their] claims and demonstrate… that the failure to timely file was caused by extraordinary circumstances beyond [their] control." *Heil*, 298 F. App'x at 707 (internal citations omitted); *see also Perkins v. Johnson*, 551 F. Supp. 2d 1246 (D. Colo. 2008) ("[t]he Tenth Circuit has noted that application of the doctrine is limited to rare and exceptional circumstances").

There are simply no facts pled which if proven true could support application of the equitable tolling doctrine, and Plaintiffs have not explained how their complaint could be further amended in a way to allege them, nor could they. There is no just reason to saddle the parties with discovery and summary judgment when there are no factual allegations that could possibly entitle Plaintiffs to invoke equitable tolling.

### IV. The Trial Payment Plans Do Not Support Any Claims.

Plaintiffs concede that they cannot enforce HAMP against Defendants, but instead seek to enforce the TPPs citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) and its

progeny, but their reliance on these cases is misplaced. While the courts in *Wigod* and others have concluded that borrowers can state viable claims when lenders breach TPPs, none of them permit claims when borrowers do not comply with the TPPs they purport to enforce. *See Wigod*, 673 F.3d at 558-59; *see also, George v. Urban Settlement Services*, 833 F.3d 1242, 1259-62 (10th Cir. 2016) and *Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1209 (D. Colo. 2014). In contrast to *Wigod*, the factual allegations establish that Plaintiffs did not comply with the TPPs (*see* Doc. 32, p. 8-9), and accordingly they cannot enforce them.

Moreover, unlike the TPPs at issue in *Wigod*, the TPPs at issue in this case merely stated that "a foreclosure sale will not be held as long as you comply with the terms of the trial period plan and make all your payments on time." *See* Doc. 32-1, Exs. D, H, and I. There are no allegations that Defendants breached the TPPs.

**V.     The Credit Agreement Statute of Frauds Bars Plaintiffs' Claims.**

While the allegations are not clear, Plaintiffs argue that the TPPs are the agreements they seek to enforce. But the credit agreement statute of frauds bars enforcement of the TPPs because they were not signed. *See, e.g., Clark*, 69 F. Supp. 3d at 1216-17 (barring claims arising from an unsigned TPP with similar terms, and concluding that an electronic signature was insufficient); *Warner v. Citimortgage, Inc.*, No. 11-cv-2657, 2012 WL 846714 at * 2-3 (D. Colo. March 13, 2012) (same).

To the extent Plaintiffs are attempting to enforce any other promises to modify their loan, Plaintiffs' claims fall squarely within the statute of frauds. *See* C.R.S. § 38-10-124(1)(a). Contrary to Plaintiffs' arguments, their allegations are that: "[t]ime and time again, the bank promised to modify their mortgage upon Mr. and Mrs. Martinez meeting certain requirements,"

and similar generic allegations. FAC, ¶¶ 3, 53, 63, and 71. Without a document signed by the parties memorializing these alleged "promises," Plaintiffs' claims are barred. *See Lang v. Bank of Durango*, 78 P.3d 1121, 1123-24 (Colo. App. 2003) (the statute of frauds bars actions to enforce an oral credit agreement, and claims arising out of or relating to a credit agreement, including tort, fraud, and equitable claims).

### VI.     Plaintiffs' Intentional Infliction of Emotional Distress Claim Fails.

While Plaintiffs argue that their claim for intentional infliction of emotional distress is premised on "much more than just a pedestrian renegotiation of contractual terms," the allegations are otherwise. *See* Doc. 43, p. 10. Colorado courts routinely dismiss claims of outrageous conduct when based on the denial of a loan modification or foreclosure. *See, e.g., Tatten v. Bank of America Corp.*, 912 F.Supp.2d 1032, 1044 (D. Colo. 2012); *Hewitt v. Pitkin County Bank & Trust Co.*, 931 P.2d 456, 459 (Colo. App. 1995) (finding that allegations that a bank "accepted loan payments from him and then reneged on its promise not to commence foreclosure proceedings against him, and instead commenced such proceedings the very next day" could not support outrageous conduct).

Stripped of rhetoric and conclusory statements, the factual allegations do not support any argument that Wells Fargo guaranteed Plaintiffs a modification. Rather, the allegations and public record establish that Plaintiffs successively broke three Trial Payment Plans by either not paying what was agreed, or not resolving other liens encumbering the property that served as the security for their loan. *See* Doc. 32, pp. 8-9. There can be nothing extreme or outrageous about Defendants denying Plaintiffs a modification in light of these allegations, and no just reason to allow their claim to proceed.

While not pled in the First Amended Complaint, and accordingly not properly considered, Plaintiffs argue that they had repeated telephone calls with Wells Fargo representatives that required Plaintiffs to wait on hold. *See* Doc. 43, p. 11. While arguably annoying and frustrating, such allegations could not possibly rise to the level of "extreme and outrageous" conduct under Colorado law. *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003) (holding that "[m]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient").

In any event, because Plaintiffs' claim arises from Defendants' purported failure to comply with contractual obligations (specifically, the TPPs), it is barred under the economic loss rule. Plaintiffs' reliance on *Clark* is misplaced. In *Clark*, the borrower's tort claims were premised on more than the defendant's failure to adhere to contractual obligations. *Clark*, 69 F.Supp. 3d 1203, 1223. But here, Plaintiffs have not alleged any misconduct by Defendants separate and apart from Defendants' failure to modify their loan.

Plaintiffs also argue that the economic loss rule does not apply because there is an independent duty to refrain from "extreme and outrageous" conduct imposed by tort law, and the damages they are seeking are non-economic. *See* Doc. 43, p. 12. Plaintiffs' argument is contrary to the Court of Appeals decision in *Miller v. Bank of New York Mellon*, which held that the lender-borrower relationship does not support the special relationship necessary to trigger an independent duty of care, and accordingly affirmed dismissal of the borrowers' tort claims, including intentional infliction of emotional distress. 379 P.3d 342, 348 (Colo. App. 2016). Plaintiffs here are no differently situated than the borrowers in *Miller*. In the absence of a special relationship, Plaintiffs are barred from asserting any tort claims.

### VII. Plaintiffs Have No Title To Quiet.

Plaintiffs argue that their quiet title claim rests on the strength of their deed, *see* Doc. 43, p. 13, but their title was extinguished by the foreclosure. *See* C.R.S. § 38-38-501, *et, seq.* Plaintiffs cite no authority for the proposition that the foreclosure was "a legal nullity." Rather, the law in Colorado is that a court "may not set aside a completed foreclosure sale absent a finding of fraud, deceit, collusion or that a party was misled by the public trustee," and Plaintiffs do not allege such facts. *S Mount Carbon Metro. Dist. v. Lake George Co.*, 847 P.2d 254, 256 (Colo. App. 1993). In addition, any determination setting aside the foreclosure, and thereby restoring title in Plaintiffs, would be barred by the *Rooker-Feldman* doctrine (*see* Doc. 48, pp. 6-10, which Defendants join and incorporate by this reference).

### VIII. The Statute of Limitations Had Not Run On Defendants' Right To Collect.

Plaintiffs do not dispute that the statute of limitations on an installment contract runs from the date of maturity or the date of acceleration. The parties simply dispute whether the allegations sustain acceleration more than six (6) years before the foreclosure proceeded. They do not. The allegations are that the recording of the NED was "the unequivocal and affirmative act" that apprised them of Defendants' exercise of the right to accelerate. But any purported acceleration was necessarily revoked and rescinded when the referenced NEDs were withdrawn, and the absence of a published Colorado case reaching this basic conclusion does not render the argument any less correct.[1]

Indeed, other jurisdictions that have considered this question agree that where a foreclosure is withdrawn, "the installment nature of a loan secured by such a mortgage continues

---

[1] While not binding, at least one Colorado trial court has adopted this logic. *See* Ex. M.

until a final judgment of foreclosure is entered and no action is necessary to reinstate it via a notice of 'deceleration' or otherwise." *Deutsche Bank Trust Co. Americas v. Beauvais*, 188 So.3d 938, 947-49 (Fla. Dist. Ct. App. 2016) (noting that under both federal and local custom and practice, the dismissal of a foreclosure action is treated as automatically "'decelerating' an acceleration made in a foreclosure action"). After such a withdrawal, "the parties return[] to the status quo that existed prior to the [foreclosure action]." *Nationstar Mortg., LLC v. Brown*, 175 So.3d 833, 835 (Fla. Dist. Ct. App. 2015); *see also Koyle v. Sand Canyon Corp.*, No. 2:15-CV-00239, 2016 WL 917927, at *6-9 (D. Utah Mar. 8, 2016) (holding that withdrawal of a notice of default containing an acceleration, part of the Utah foreclosure process, had the effect "that the acceleration was voided").

## IX. The Allegations Support Tolling Of Defendants' Right To Foreclose.

Plaintiffs are incorrect that equitable tolling is inappropriate for resolution on a motion to dismiss. Plaintiffs allege that they submitted over five (5) requests for modification, and filed two appeals, between July 2010 and November 2014, during which time they were offered three separate TPPs. FAC, ¶¶ 51-58. In addition to dual tracking laws, the TPPs each represented that Defendants would not foreclose pending decision on Plaintiffs' applications for a permanent modification. To allow Plaintiffs to argue that the delay in foreclosure they invited through their successive modification applications, and enjoyed through their continued occupancy of the property, would be entirely inequitable even when viewing the allegations in the light most favorable to Plaintiffs. *See Noel v. Hoover*, 12 P.3d 328, 330 (Colo. App. 2000).

### X.  Plaintiffs' Partial Payments Tolled The Statute of Limitations.

Plaintiffs argue that the intervening payments they made were not on the original debt, but were meant to apply to a modified loan balance. The TPPs themselves, and Plaintiffs' bankruptcy filings, fatally undermine this argument (*see* Doc. 48, pp. 2-5, which Defendants join and incorporate by this reference). Plaintiffs clearly and unequivocally stated in their bankruptcy pleadings their intent to pay the debt. *See* Ms. Martinez's statement of intention filed on March 16, 2017 in the U.S. Bankruptcy Court, District of Colorado (Case No. 17-12149-TBM) and Mr. Martinez's Chapter 13 Plan filed on August 10, 2016 in the U.S. Bankruptcy Court, District of Colorado (Case No. 16-17901-HRT), attached as Ex. N.

### XI.  The Allegations Support Equitable Estoppel of Plaintiffs' Claims.

Plaintiffs argue that Defendants do not explain how their allegations give rise to an estoppel. In doing so, Plaintiffs ignore that their allegations, as well as their bankruptcy filings, demonstrate that they were aware of the facts, but never objected to the foreclosure before it proceeded. FAC ¶ 100. Moreover, to the extent Plaintiffs seek to invalidate the foreclosure (*see* Doc. 43, p. 13, arguing that the public trustee's deed was "void"), their claim is barred by *Rooker-Feldman* (*see* Doc. 48, pp. 6-10, which Defendants join and incorporate).

DATED:  April 12, 2018

/s/Stephanie A. Kanan
Jessica E. Yates, #38003
Stephanie A. Kanan, #42437
SNELL & WILMER L.L.P.
1200 Seventeenth Street, Suite 1900
Denver, CO 80202-5854
Phone: (303) 634-2000
Email:  jyates@swlaw.com; skanan@swlaw.com
***Counsel for U.S. Bank, N.A. and Wells Fargo Bank, N.A.***

## **CERTIFICATE OF SERVICE**

This is to certify that on April 12, 2018, a true and correct copy of the above and foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to the counsel of record.

Daniel J. Vedra, Esq.
Katherine Russell, Esq.
VEDRA LAW LLC
1435 Larimer Street, Suite 302
Denver, CO 80202
Telephone:  (303) 937-6540
Facsimile:  (303) 937-6547
Email: dan@vedralaw.com
Email: kate@vedralaw.com

*Attorneys for Plaintiffs Jesse Martinez and Karen Martinez*

Holly R. Shilliday, Esq.
McCarthy & Holthus, LLP
7700 E. Arapahoe Road, Suite 230
Centennial, Colorado 80112
Telephone: (303) 952-6905
Email: hshilliday@mccarthyholthus.com

*Attorneys for Defendant McCarthy & Holthus, LLP*

　　　　　　　　　　　　　　　　　　　　　*/s/Sandy Braverman*
　　　　　　　　　　　　　　　　　　　　　Sandy Braverman

4817-4366-7808